**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

UNITED STATES OF AMERICA,

       Plaintiff,

v.                            Case No. 09-20225

SCOTT SAMONEK,

       Defendant.

_____/

**ORDER DENYING DEFENDANT'S "MOTION TO DISMISS INDICTMENT FOR
VIOLATION OF SPEEDY TRIAL ACT"**

On November 13, 2009, Defendant Scott Samonek filed a "Motion to Dismiss Indictment for Violation of Speedy Trial Act." The Government filed a response on November 23, 2009, and Defendant filed a reply on December 16, 2009. On December 23, 2009, the court directed the Government to file a sur-reply, which it did on December 30, 2009. Having reviewed the briefs, the court concludes a hearing on this motion is unnecessary. *See* E.D. Mich. LR 7.1(e)(2). For the reasons stated below, the court will deny Defendant's motion.

## I. BACKGROUND

Defendant made his initial appearance on February 11, 2009, following his arrest on a federal criminal complaint. A detention hearing was held on February 12, 2009, and the magistrate judge ordered Defendant detained pending trial. A preliminary examination was then scheduled for February 23, 2009.

On February 18, 2009, the Assistant United States Attorney assigned to the case, Louis P. Gabel, and Defendant's attorney at the time, Gil Whitney McRipley, stipulated to adjourn the preliminary examination, stating that there was good cause to adjourn it, that the extension was "necessary to continue case investigation and serve the ends of justice," and that Defendant agreed it was in his best interest, "taking into

account the public interest in the prompt disposition of criminal cases." (2/18/09 Stipulation.)  On February 24, 2009, the magistrate judge acknowledged the stipulation of the parties and "ordered that good cause exists to extend" the preliminary examination until March 23, 2009.  (2/24/09 Order.)

In the meantime, the parties engaged in plea negotiations.  On February 25, 2009, the Government sent McRipley an email with the following attachments: (1) a proposed Rule 11 Plea Agreement, (2) Rule 11 sentencing worksheets, (3) a Cooperation Agreement, and (4) a Kastigar letter.  (Gov't's Sur-reply Ex. A.)  The Government offered Defendant the opportunity to plead guilty by way of information to (1) possession with intent to distribute cocaine, 21 U.S.C. § 841(a)(1), and (2) felon in possession of a firearm, 18 U.S.C. § 922(g)(1), in exchange for not charging (3) distribution of cocaine, 21 U.S.C. § 841(a)(1), and (4) possession of a firearm in furtherance of a drug trafficking crime, 18 U.S.C. § 924(c).  (*See id.*)  The Government calculated Defendant's sentencing guideline range as 188-235 months if he accepted this plea, and as 262-327 months if he was indicted on all counts and found guilty at trial.  (*Id.*)  The following day, McRipley responded from his Blackberry, "Got the attachments.  Starting a murder trial mon.  I ll [sic] get back to you after its over.  Samonek wants to talk."  (*Id.* Ex. B.)  On March 5, 2009, McRipley met with Defendant "at WCJ regarding the review of these materials and status of this case."  (Suppl. Statement in Support of McRipley's Motion to Withdraw Ex. 3, Legal Services Invoice.)

After McRipley apparently never got back to the Government, Gabel inquired of McRipley by email on March 9, 2009,

> Have you had an opportunity to discuss the proposed plea (emailed to you on 2/25/09) with Mr. Samonek?  I will need to know whether he is going to proceed with a plea soon in order to reserve grand jury time or in order to have enough time to get supervisor approval to not charge certain offenses.

(*Id.* Ex. C.)  McRipley replied six minutes later, "I plan to see this week (I know -pre indictment) and discuss options with you and your agents."  (*Id.*)

As it turned out, McRipley was unable to obtain Defendant's acceptance of the plea and cooperation agreements prior to the preliminary examination scheduled for March 23, 2009.  (Gov't's Sur-reply at 4.)  McRipley informed the Government in a telephone conversation that Defendant was willing to sit for a debriefing with ATF agents and that Defendant would likely sign the Rule 11 paperwork at that time.  (*Id.*)  This meeting was scheduled for April 1, 2009.  (*Id.*)

The parties therefore stipulated to an adjournment of the March 23, 2009 preliminary examination.  (3/13/09 Stipulation.)  The magistrate judge ordered the preliminary examination continued until April 20, 2009.  (3/17/09 Order.)  Neither the stipulation nor the order granting the continuance mentioned that the "ends of justice" served by granting the continuance would "outweigh the best interest of the public and the defendant in a speedy trial."  18 U.S.C.  § 3161(h)(7)(A).

Before the meeting scheduled for April 1, 2009, Gabel received supervisor approval for the pre-indictment plea agreement.  (Gov't's Sur-reply at 5.)  On March 26, 2009, Gabel emailed McRipley, stating, "Attached are the plea papers for Mr. Samonek. I will bring the originals to the proffer on April 1st so that he can sign those.  ATF Agent Mike Parsons and myself will be attending the proffer."  (*Id.* Ex. D.)

The day before the scheduled proffer, McRipley sent the following email to Gabel, "I'm still in trial.  Should be over in two days can we reset the debriefing [sic].  I haven't had the chance to talk to him yet."  (*Id.* Ex. C.)  Gabel responded, "We already have him scheduled to be transported by the Marshals, but I will try to cancel it now." (*Id.*)  McRipley replied, "I apologize.  We've been in trial since last Tuesday.  Double defendant murder. Sorry -----."  (*Id.*)

3

The debriefing was rescheduled for April 22, 2009.  (Gov't's Sur-reply at 5.)
Therefore, the preliminary examination scheduled for April 20, 2009, needed to be
adjourned.  On April 10, 2009, the Government and McRipley stipulated to adjourn the
preliminary examination until June 8, 2009, and the magistrate judge ordered it
continued until that date.  (4/13/09 Order.)  Like the previous stipulation and order, there
is no mention that the "ends of justice" served by granting the continuance would
"outweigh the best interest of the public and the defendant in a speedy trial."  18 U.S.C.
§ 3161(h)(7)(A).

The April 22, 2009 debriefing never occurred.  According to McRipley's invoice,
Defendant decided "to review other law and matters, event rescheduled."  (Suppl.
Statement in Support of McRipley's Motion to Withdraw Ex. 3, Legal Services Invoice.)
On April 28, 2009, McRipley wrote to the Defendant,

> Initially, it was thought that a negotiated plea could be worked out in all
> your cases, but now matters have changed.  You have a right to fight all
> your cases, but you can not get a bond hearing without your case being
> indicted and set before a judge or unless you appeal the magistrate's
> ruling before a duty judge.  The preliminary exam in this case has been
> adjourned to June 8, 2009.  So the US Attorney has until then to indict
> you.  They wanted to negotiate a plea "pre-indictment" but they have
> indicated that the same plea offer will remain open even if you secure new
> counsel.  Also, the opportunity for a better offer still remains if assistance
> is given.

(*Id.* Ex. 2.)  Another debriefing was scheduled for May 5, 2009; however, this debriefing
was cancelled as well.  (*See id.* at 1-2, Ex. 3)  McRipley's invoice indicates that
Defendant requested additional research.  (*Id.* Ex. 3.)

Ultimately, "it became apparent to the [G]overnment that Defendant was not
seriously interested in considering the proposed plea agreement."  (Gov't's Sur-reply at
5.)  On May 21, 2009, a grand jury indicted Defendant on four counts: (1) distribution of
cocaine, 21 U.S.C. § 841(a)(1); (2) possession with intent to distribute cocaine, 21
U.S.C. § 841(a)(1); (3) possession of a firearm in furtherance of a drug trafficking crime,
18 U.S.C. § 924(c); (4) felon in possession of a firearm, 18 U.S.C. § 922(g)(1).  Before

4

the indictment, the plea agreement offer by the Government was never withdrawn by the Government or rejected by Defendant.  (*Id.*)

On June 16, 2009, McRipley filed a motion to withdraw because of Defendant's lack of additional payments and because of Defendant's decision to not pursue "some opportunities for resolution."  (6/25/09 Hearing.)  After stressing to McRipley that a defendant's decision to proceed to trial did not represent a breakdown in the attorney-client relationship, the court granted the motion to withdraw.  (*Id.*; 9/30/09 Order.)  The Federal Defender's Office was then appointed to represent Defendant.  David C. Tholen entered an appearance on October 2, 2009, and filed the present motion to dismiss the indictment for violation of the Speedy Trial Act on November 13, 2009.

## II. DISCUSSION

The Speedy Trial Act provides that an "indictment charging an individual with the commission of an offense shall be filed within thirty days from the date on which such individual was arrested."  18 U.S.C. § 3161(b).  In his motion, Defendant argues that the Speedy Trial Act was violated because he was not indicted until approximately ninety days following his arrest.  (Def.'s Mot. at 2.)  The Government argues that there was no Speedy Trial Act violation because most, if not all, of that time period should be excluded from the Speedy Trial Act time calculation.  (*See* Gov't's Sur-reply at 6.)

### A. Ends of Justice

Certain periods of time are excluded when computing the time in which an indictment must be filed.  *See* 18 U.S.C. § 3161(h).  For example, the Act excludes from computation:

> [a]ny period of delay resulting from a continuance granted by any judge on his own motion or at the request of the defendant or his counsel or at the request of the attorney for the Government, if the judge granted such continuance on the basis of his findings that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial.

5

*Id.* § 3161(h)(7)(A).  If the court does not set forth its reasons for finding that the "ends of justice" served by granting the continuance "outweigh the best interest of the public and the defendant in a speedy trial," then the delay "shall not be excludable" from the Speedy Trial Act calculation.  *Id.*

In this case, the initial briefing of the parties focused on the "ends of justice" exception and whether or not the Defendant's consent to the adjournments of his preliminary exam was necessary to toll the Speedy Trial Act clock.  Under Sixth Circuit precedent, however, a defendant's consent is not necessary in order for an "ends of justice" continuance to toll the Speedy Trial Act clock.  *See United States v. Sobh*, 571 F.3d 600, 603 (2009).  Thus, Defendant's assertion that he did not consent to these continuances because McRipley never notified him of them is irrelevant, and no evidentiary hearing is necessary to resolve this dispute.

In his reply, Defendant for the first time raised the argument that the stipulations did not comply with the "ends of justice" exception because "the stipulations did not offer any basis on which the court could have determined that granting the adjournments served the ends of justice and outweighed the best interest of the public and the defendant in a speedy trial."  (Def.'s Reply at 3.)  Because the second and third continuances granted by the magistrate judges did not appear on their face to comply with this exception, the court ordered the Government to file a sur-reply.  In the sur-reply, the Government concedes, and the court agrees, that the "ends of justice" exception is not available in this case.  (Gov't Sur-reply at 2 ("Thus, if the magistrate judge did not make 'ends of justice' findings (either on the record or simply in his mind) before granting the continuances, as it appears happened in this case, Defendant is correct that the 'ends of justice' continuance is likely unavailable to toll the Speedy Trial Act clock." (footnote omitted).)

6

## B. Plea Bargaining

Instead, the Government argues that the period of time when the parties were engaged in plea bargaining is excludable under the Speedy Trial Act and therefore there was no violation in this case.  (*Id.* at 2-6.)

Under the Speedy Trial Act, "[a]ny period of delay resulting from other proceedings concerning the defendant" is excluded from the Speedy Trial Act calculation.  18 U.S.C. § 3161(h)(1).  In subsections (A) through (J), the statute goes on to list a number of examples of these proceedings for which the time is explicitly excluded.  *Id.*  Theses periods of delay listed in "(A) through (J) are only examples of delay 'resulting from other proceedings concerning the defendant' and are not intended to be exclusive."  *United States v. Bowers*, 834 F.2d 607, 610 (6th Cir. 1987).  Thus, although plea bargaining is not specifically listed as one of these proceedings in the statute, the Sixth Circuit has stated that "the plea bargaining process can qualify as one of many 'other proceedings.'"  *Id.* at 610 (citing *United States v. Montoya*, 827 F.2d 143, 150 (7th Cir. 1987)); *see also United States v. Hill*, No. 97-6364, 1999 WL 17645, at *2 (6th Cir. Jan. 4, 1999).  The Sixth Circuit reasoned that "all of the listed examples are of delaying circumstances that ought not to be charged to the government" and the plea bargaining process is one of these circumstances.  *Hill*, 1999 WL 17645, at *2.  The Sixth Circuit cautioned, however, that "the exclusion for plea bargaining proceedings allowed under *Bowers* should not be viewed as unlimited, or otherwise abused."  *Id.* at *2 n.3.

The prior Sixth Circuit cases excluding the plea bargaining proceedings from the Speedy Trial Act calculation have many similarities to the present case.  In *Bowers*, the defendant was not indicted until thirty-five days after his arrest.  834 F.2d at 609.  After his arrest, the defendant and the government engaged in plea negotiations.  *Id.* at 608-609.  The parties reached a tentative plea agreement whereby the defendant would

7

waive an indictment and plead guilty to a one-count information.  *Id.* at 609.  The Government's counsel prepared an agreement and information, and Defendant's counsel promised to review the agreement with defendant.  *Id.*  At the arraignment, defendant informed the magistrate and United States Attorney that he was not going to plead guilty.  *Id.*  The United States Attorney scheduled to present the matter to the next grand jury session, which was two weeks later.  *Id.*  In the meantime, the defendant filed a motion for release from custody because he had not been indicted and over thirty days had passed since his arrest.  *Id.*

The district court determined that the indictment was timely because the defense counsel failed to notify the United States Attorney that the defendant rejected the plea agreement until fifteen days later, at which point the thirty days had passed.  *Id.*  The district court was concerned that "a defendant not be permitted to 'sandbag' the government under these kinds of circumstances."  *Id.*  The Sixth Circuit affirmed the district court's determination that the indictment was timely because the plea bargaining process was excludable from the Speedy Trial Act calculation.  *Id.* at 609-610.  The Sixth Circuit reasoned that "[w]here the total period allowed for indictment is only thirty days, failure by the defendant during half that period to communicate to the government his rejection of a tentative plea agreement can be viewed as delay resulting from proceedings concerning the defendant."  *Id.* at 610.  The Sixth Circuit stated that the "district court was justified in its stated belief that these circumstances constituted an 'extreme case,' since the matter could no longer then be presented to the grand jury within the thirty-day period."  *Id.*

In *Hill*, the defendant was not indicted until over eight months after his arrest. *Hill*, 1999 WL 17645, at *1.  In the interim, the parties attempted to negotiate a plea agreement.  *Id.*  The parties initially agreed orally that the Government would not indict the defendant while he considered pleading guilty to one drug count in exchange for the

Government not pursuing a gun count, among other things. *Id.* A hearing was held, but the defendant decided not to plead guilty and instead requested a new lawyer. *Id.* A new lawyer was appointed for the defendant, and then subsequently another new lawyer was appointed for the defendant. *Id.* at *1-*2. In each case, the defendant wanted the lawyer to file a motion to dismiss based on a Speedy Trial Act violation, and in each case, the lawyer felt that he could not do so ethically based on the prior agreement with the Government. *Id.* Eventually, the defendant filed a *pro se* motion to dismiss based on the Speedy Trial Act. *Id.* at *2. Five days later, the Government indicted the defendant on two counts. *Id.*

The district court denied the defendant's motion, concluding that the period of time when the parties were negotiating a plea agreement was excludable under th Act. *Id.* at *1. The Sixth Circuit agreed, finding that the pre-indictment time for plea bargaining was excludable under 18 U.S.C. § 3161(h)(1) and thus there was no violation of the Speedy Trial Act. *Id.* It reasoned that the facts of the case indicated "that the government was prepared at all times to indict [the defendant], but agreed not to at the request of [defendant's] counsel due to ongoing plea negotiations and by order of the original trial judge." *Id.* The Sixth Circuit agreed with the district court that "these delaying circumstances are not chargeable to the government." *Id.*

In the present case, the court concludes that the pre-indictment delay of the proceedings was the result of plea negotiations between the Government and defense counsel and therefore excludable from the Speedy Trial Act under 18 U.S.C. § 3161(h)(1). *See id.*; *Bowers*, 834 F.2d at 610. Like the prosecution in *Hill*, the Government was prepared at all times to indict Defendant. For instance, in a March 9, 2009 email to McRipley, Gabel stated, "I will need to know whether he is going to proceed with a plea soon in order to reserve grand jury time." (Gov't Sur-reply Ex. C.) The Government, like the prosecution in *Hill*, prepared an agreement, and McRipley,

9

like the defense counsel in *Hill*, promised to discuss the agreement with Defendant. As in *Hill*, Defendant was not immediately indicted because the Government offered not to indict him on certain counts if he pled guilty to others by way of information. The pre-indictment delay of approximately three months for plea negotiations in this case is substantially less than the eight-month delay that was allowed in *Hill*. The Government was not neglecting this case, but instead was actively following up with McRipley in order to determine the feasibility of finalizing a plea agreement.

Nor was the Government unreasonably chasing a plea agreement. In one email, McRipley stated to the Government, "Samonek wants to talk." (Gov't's Sur-reply Ex. B.) In another email, McRipley stated, " I plan to see this week (I know -pre indictment) and discuss options with you and your agents." (*Id.* Ex. C.) Also, on three separate occasions, the Government set up debriefings with Defendant and ATF agents, including arranging for the Marshals to transport Defendant, but these debriefings never occurred, at no fault of the Government.

Even after the last debriefing was cancelled, the plea offer remained outstanding and was not revoked by the Government. On February 25, 2009, the Government sent McRipley an email with the following attachments: (1) a proposed Rule 11 Plea Agreement, (2) Rule 11 sentencing worksheets, (3) a Cooperation Agreement, and (4) a Kastigar letter. (Gov't's Sur-reply Ex. A.) On March 26, 2009, Gabel emailed McRipley, stating, "Attached are the plea papers for Mr. Samonek. I will bring the originals to the proffer on April 1st so that he can sign those." (*Id.* Ex. D.) Defendant was aware the plea agreement offer remained outstanding, as evinced by McRipley's April 28, 2009 letter to him, which stated, "They wanted to negotiate a plea 'pre-indictment' but they have indicated that the same plea offer will remain open even if you secure new counsel." (Suppl. Statement in Support of McRipley's Motion to Withdraw Ex. 2.) However, at no point prior to the indictment was it ever conveyed to the Government

that Defendant rejected these proposed agreements.  Thus, like in *Bowers* where defense counsel never conveyed the defendant's rejection of the plea agreement, this court concludes that Defendant's failure "to communicate to the government his rejection of a tentative plea agreement [if he even ever rejected it] can be viewed as delay resulting from proceedings concerning the defendant."  834 F.2d at 610.  If Defendant did not wish to cooperate or plead guilty and wanted to cease negotiations, he could have informed the Government and based on the Government's representation in the emails, it would have then reserved grand jury time to seek an indictment.

This court shares the same sandbagging concerns as expressed by the district court in *Bowers*.  Dismissing the indictment in this case would create an incentive for defendants to drag their feet through the plea bargaining process in the hopes that it may result in a "get out of jail free card" if a court were to dismiss the indictment with prejudice based on a violation of the Speedy Trial Act.

The focus of Defendant's motion and briefs is that he never consented to the adjournments of the preliminary exams agreed to by McRipley.  (Def.'s Mot. ¶ 9; Def.'s Reply at 3.)  However, even if Defendant could show that McRipley was acting without his consent, it would not change the result.  When dealing with a defendant in a criminal case, the Government is obligated to communicate with a defendant through his attorney.  The Government must therefore rely on the communications coming from defense counsel as if they were authorized by the defendant.  *See United States v. Lewis*, 39 F. App'x 337, 339 (7th Cir. 2002) ("In 'our system of representative litigation, . . . [a] party is deemed bound by the acts of his lawyer-agent," and unless a defendant requests to proceed pro se, then his counsel necessarily speaks for him. (quoting *Link v. Wabash R.R. Co.*, 370 U.S. 626, 634 (1962) (alteration in original)).  Otherwise, the Government and the court would be put "in the precarious position of having to

11

determine whether a defendant's legal counsel or the defendant himself is actually speaking for a defendant." *United States v. Bryant*, No. 96-4359, 1998 WL 39393, at *3 (4th Cir. Feb. 2, 1998). While Defendant may regret his initial choice of attorney, the Government cannot be punished for this choice. *See Vermont v. Brillon*, 129 S. Ct. 1283 (2009) (applying the Sixth Amendment) ("Because 'the attorney is the [defendant's] agent when acting, or failing to act, in furtherance of the litigation,' delay caused by the defendant's counsel is also charged against the defendant. The same principle applies whether counsel is privately retained or publicly assigned." (alteration in original) (citation omitted)).

Accordingly, the court concludes that the delaying circumstances in this case are not chargeable to the Government. *Hill*, 1999 WL 17645, at *2. The delay caused by the plea negotiations, which began no later than February 18, 2009, when the parties first stipulated to a continuance, and never formally concluded before Defendant was indicted on May 21, 2009, is excluded under 18 U.S.C. § 3161(h)(1) from the Speedy Trial Act time calculation. *See id.*; *Bowers*, 834 F.2d at 610. Thus, the Speedy Trial Act was not violated in this case.[1]

---

[1]Even if the court had found a Speedy Trial Act violation, the indictment would have been dismissed without prejudice. *See* 18 U.S.C. § 3162(a)(1). The court must consider three factors when deciding whether to dismiss a case with or without prejudice: (1) "the seriousness of the offense," (2) "the facts and circumstances of the case which led to the dismissal," and (3) "the impact of a reprosecution on the administration of this chapter and on the administration of justice." *Id.*

All of these factors weigh against dismissing this case with prejudice. Defendant is charged with four serious offenses and faces a potential lengthy prison sentence of 262 to 327 months. The firearms recovered were particularly lethal and readily accessible by both Defendant and a child living in the home. As discussed above, the delayed indictment in this case was the direct result of the plea negotiations between the parties, and Defendant or his counsel repeatedly urging the Government to agree with adjournments and cancelled debriefings. Preventing reprosecution would frustrate the administration of justice and the Speedy Trial Act as well as chill plea negotiations by encouraging Defendants to "sandbag" during the plea negotiation process in order seek a dismissal based on a delayed indictment.

Moreover, "[d]ismissals with prejudice generally require a showing of a 'truly neglectful attitude,' 'bad faith,' a 'pattern of neglect,' or other serious misconduct, as well as actual prejudice to the defendant." *United States v. Gaskin*, 364 F.3d 438, 451 n.3

**III. CONCLUSION**

For the reasons above, IT IS ORDERED that Defendant's "Motion to Dismiss Indictment for Violation of Speedy Trial Act" [Dkt. # 22] is DENIED.

                    s/Robert H. Cleland
                    ROBERT H. CLELAND
                    UNITED STATES DISTRICT JUDGE

Dated:  January 20, 2010

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, January 20, 2010, by electronic and/or ordinary mail.

                    s/Lisa G. Wagner
                    Case Manager and Deputy Clerk
                    (313) 234-5522

---

(2d Cir. 2004) (quoting *United States v. Taylor*, 487 U.S. 326 (1988)) (citations omitted). None of these are present in this case.  Thus, if the court had found a violation, it would have been required to dismiss without prejudice.

S:\Cleland\JUDGE'S DESK\C1 ORDERS\09-20225.SAMONEK.SpeedyTrialAct.npk.wpd